UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAMON ASH,

                        Plaintiff,

                                                            9:18-CV-0738
v.                                                          (MAD/ML)

CORRECTIONAL OFFICER NATHAN
J. JOHNSTON, Correctional Officer,
Clinton Correctional Facility; and
CORRECTIONAL OFFICER SETH M.
BOMBARD, Correctional Officer,
Clinton Correctional Facility,

                        Defendants.
_____

APPEARANCES:                                     OF COUNSEL:

DAMON ASH
   Plaintiff, *Pro Se*
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821

LETITIA A. JAMES                                 BRIAN W. MATULA, ESQ.
Attorney General for the State of New York       Assistant Attorney General
   Counsel for Defendants
The Capitol
Albany, New York 12224


MIROSLAV LOVRIC, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION</u>

This matter has been referred to me for a Report and Recommendation by the Honorable Mae A. D'Agostino, United States District Judge.  Currently before the Court, in this civil rights action filed by Damon Ash ("Plaintiff") against (a) Correctional Officer Nathan J. Johnston, Correctional Officer, Clinton Correctional Facility, and (b) Correctional Officer Seth M. Bombard, Correctional Officer, Clinton Correctional Facility (collectively "Defendants"), is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.  (Dkt. No. 32.)  For the reasons set forth below, I recommend that Defendants' motion for summary judgment be denied.

# TABLE OF CONTENTS

I.    RELEVANT BACKGROUND ................................................................................ 1

  A.   Plaintiff's Claims ........................................................................................ 1

  B.   Statement of Undisputed Material Facts ...................................................... 1

  C.   Parties' Briefing on Defendants' Motion for Summary Judgment ............................ 3

II.   RELEVANT LEGAL STANDARDS .................................................................. 5

  A.   Standard Governing a Motion for Summary Judgment ................................ 5

  B.   Standard Governing Exhaustion of Administrative Remedies ..................... 7

III.  ANALYSIS ........................................................................................................ 11

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Claims

Generally, liberally construed, Plaintiff's Complaint asserts a claim of excessive force against Defendants in their individual capacities, in violation of the Eighth Amendment and 42 U.S.C. § 1983.  (Dkt. No. 1; Dkt. No. 6.)  As relief, Plaintiff seeks (1) an injunctive "order that permanently removes each defendant found liable from their employment or, in the alternative, enjoins them from having any contact with inmates," (2) declaratory judgment, (3) compensatory judgment in the amount of $2,000,000.00, (4) punitive damages in the amount of $5,000,000.00, and (5) costs and fees.  (Dkt. No. 1 at 11.)  The Court's Decision and Order dated July 13, 2018, thoroughly outlines Plaintiff's allegations and claims.  (Dkt. No. 6.)  Familiarity with the Complaint is assumed in this Report-Recommendation.

### B.    Statement of Undisputed Material Facts

Unless otherwise noted, the following facts were asserted and supported by Defendants in their Rule 7.1 Statement and not denied by Plaintiff in a Rule 7.1 Response.  (*Compare* Dkt. No. 32, Attach. 6 [Defs.' Rule 7.1 Statement], *with* Dkt. No. 34 [Pl.'s Response].)[1]

1.    Plaintiff was incarcerated at Great Meadow Correctional Facility when he filed the Complaint.

2.    Plaintiff's Complaint alleges that Defendants (two correction officers) assaulted him on November 28, 2017, while incarcerated at Clinton Correctional Facility.

---

[1]    The Court notes that Plaintiff's response, appears to be a response to the Declaration of Rachael Seguin, as opposed to a response to Defendants' statement of material facts.  (Dkt. No. 34.)

3.      Plaintiff filed a grievance at Clinton Correctional Facility concerning the November 28, 2017 incident.[2]

4.      Plaintiff's grievance was denied by the facility's Superintendent.[3]

5.      Plaintiff appealed the denial of his grievance concerning the incident of November 28, 2017, to DOCCS's Central Office Review Committee ("CORC"), which was received by the IGRC Clerk on or about February 8, 2018.[4]

6.      The CORC received Plaintiff's appeal on or about February 21, 2018.[5]

7.      The Complaint in this action is dated June 12, 2018, and was filed on or about June 25, 2018.

---

[2]      Plaintiff denied the paragraphs in Rachael Seguin's declaration that supported this asserted statement of fact.  (Dkt. No. 34 at ¶¶ 8, 10.)  However, Plaintiff's denial relates to whether the proper procedure for consolidation of his grievances was followed.  (*Id.*)  Even taking as true Plaintiff's assertions, they do not contradict the fact as asserted by Defendants. Instead, Plaintiff attempts to controvert an implication of the fact asserted, which is improper in a Rule 7.1 Response.  *See Goldstick v. The Hartford, Inc.,* 00-CV-8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (striking plaintiff's Rule 56.1 Statement, in part, because plaintiff added "argumentative and often lengthy narrative in almost every case the object of which is to 'spin' the impact of the admissions plaintiff has been compelled to make"); *Yetman v. Capital Dist. Transp. Auth.,* 12-CV-1670, 2015 WL 4508362, at *10 (N.D.N.Y. July 23, 2015) (Suddaby, J.) (citing authority for the point of law that summary judgment procedure involves the disputation of asserted facts not implied facts).   To the extent that a non-movant desires to set forth any additional material facts that he contends are in dispute, he is required by Local Rule 7.1(a)(3) to do so in separately numbered paragraphs.  As a result, I deem this statement admitted.

[3]      *See, supra,* note 2.  In addition, Plaintiff argues that he was incorrectly advised that he "could not file a grievance on an issue that was being heard through a discipline hearing."  (Dkt. No. 34 at ¶ 11.)  Again, Plaintiff's response improperly pertains to an implication of fact asserted and is therefore deemed admitted.

[4]      *See, supra,* notes 2 and 3.

[5]      *See, supra,* notes 2 and 3.

8.      DOCCS's Central Office Review Committee issued its decision concerning Plaintiff's appeal on April 24, 2019.[6]

9.      At the time Plaintiff filed his Complaint in this action, CORC had not yet issued a decision in the administrative proceeding concerning this incident.

### C.      Parties' Briefing on Defendants' Motion for Summary Judgment

#### 1.      Defendants' Memorandum of Law

Generally, in support of their motion for summary judgment, Defendants assert the following two arguments: (1) Plaintiff's action should be dismissed because he did not exhaust his administrative remedies before commencing this action, and (2) a delay in CORC's issuance of its determination does not render an otherwise "available" administrative remedy unavailable. (*See generally* Dkt. No. 32, Attach. 7 [Defs.' Mem. of Law].)

More specifically, Defendants argue that Plaintiff's Complaint must be dismissed because he did not fulfill the Prison Litigation Reform Act ("PLRA") exhaustion requirements in that he failed to wait for a final decision from the CORC before filing this action.  (*Id.*) Defendants argue that the law requires inmates to complete the entire three-tiered process, including receipt of a final decision by CORC before commencing an action, even if CORC's decision is untimely under DOCCS's internal rules and regulations.  (*Id.*)  As a result, Defendants argue that Plaintiff's failure to exhaust his administrative remedies before commencing this action requires dismissal.  (*Id.*)

Moreover, Defendants argue that the CORC's failure to issue its decision "beyond the 30-day regulatory deadline (*see* 7 N.Y.C.R.R. §[]701.5), . . . does not operate to convert an otherwise 'available' administrative remedy to one that is 'unavailable.'"  (*Id.* at 5.)  Defendants

---

[6]      *See, supra*, notes 2 and 3.

argue that absent one of the narrowly defined circumstances set forth in *Ross*, which are not present here, Plaintiff cannot establish that the administrative process was technically unavailable to him.  (*See generally id.*)  Moreover, Defendants argue that legislative changes to 42 U.S.C. § 1997e, evince a determination by Congress that courts should not assess the efficiency and effectiveness of the administrative remedies provided to inmates within the context of the court's exhaustion analysis, and instead courts should only "determine whether there was a process available to the inmate and whether that process was exhausted."  (*Id.* at 8-9.)  Defendants argue that in New York, an inmate's administrative remedies are not exhausted until the inmate receives a determination from CORC, and pursuant to federal law, an inmate cannot commence an action in federal court until that administrative process is complete.  (*See generally id.*)

### 2. Plaintiff's Opposition

Generally, in his opposition, Plaintiff asserts the following two arguments: (1) he was obstructed from exercising his right to file a grievance when Plaintiff received "letters that stated that [he] could not file a grievance on the assault due to this matter being heard in a hearing," and (2) the grievance process procedure was violated when Plaintiff's grievances were not responded to in a timely fashion.  (*See generally* Dkt. No. 34.)  More specifically, Plaintiff argues that because 7 N.Y.C.R.R. § 701.5 does not provide any guidance on any action that a grievant may take if he does not receive a timely decision from the CORC, the administrative remedies were no longer available to him.  (*Id.*)  Finally, Plaintiff argues that he was informed that "due to the time exceeding over what it was that [he] would receive no reply" and therefore thought that waiting for a response from CORC "was a dead end."  (Dkt. No. 34 at 9.)

### 3.    Plaintiff's Supplemental Opposition

Generally, in his submission in further opposition to Defendants' motion for summary judgment, Plaintiff indicates that he "would like to have [his] disciplinary record clear of assaulting an officer, which never took place and can be seen in the medical records of the defendant." (Dkt. No. 38.)  Plaintiff states that he would like "the court[] to add this as part of [his] relief" sought in this action.  (*Id.*)[7]

## II.    RELEVANT LEGAL STANDARDS

### A.    Standard Governing a Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[8]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

---

[7]    To the extent that Plaintiff's supplemental opposition is construed as a request to amend his complaint, that request is denied without prejudice as improper. Pursuant to the Mandatory Pretrial Discovery and Scheduling Order, the deadline for amended pleadings was January 13, 2019.  (Dkt. No. 15.)  If Plaintiff wishes to amend his Complaint, he must file a proper motion pursuant to Fed. R. Civ. P. 15 and Northern District of New York Local Rule 7.1.  The motion must include a notice of motion, supporting affidavit, a copy of the proposed amended complaint, and must demonstrate good cause for why the motion was not timely filed.  The proposed amended complaint must also be a complete pleading, which, if accepted for filing, would replace the Complaint in all respects.

[8]    As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted).  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c), (e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-movant is proceeding *pro se*.[9] (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[10] As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[11]

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

---

[9]     *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

[10]     *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).

[11]     *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement[12]–even when the non-movant was proceeding *pro se*.[13]

### B.    Standard Governing Exhaustion of Administrative Remedies[14]

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) ("The [PLRA] mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions."). "[T]he PLRA's exhaustion requirement applies to all

---

[12]    Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

[13]    *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases); *see also Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003) (Hurd, J.) (holding that the Court is not required to "perform an independent review of the record to find proof of a factual dispute.").

[14]    This recitation tracks that of United States Magistrate Judge Thérèse Wiley Dancks in *Hamlett v. Stotler*, 17-CV-0939, 2019 WL 430699, at *6-8 (N.D.N.Y. Aug. 15, 2019) (Dancks, M.J.), *adopted* 2019 WL 4305443 (Sharpe, J.).

inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

The PLRA requires "proper exhaustion," which means using all steps required by the administrative review process applicable to the institution in which an inmate is confined and doing so properly. *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "'using all steps that the [government] agency holds out, and doing so properly'" (quoting *Woodford*, 548 U.S. at 90)). In New York State prisons, DOCCS has a well-established three-step IGP. 7 N.Y.C.R.R. § 701.5.

First, an inmate must file a complaint with the facility IGP clerk within twenty-one days of the alleged occurrence. 7 N.Y.C.R.R. § 701.5(a)(1). A representative of the facility's IGRC has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* § 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, *id.* § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing. *Id.* § 701.5(b)(3).

Second, a grievant may appeal the IGRC's decision to the facility superintendent within seven calendar days of receipt of the IGRC's written decision. *Id.* § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id.* § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are

forwarded directly to CORC for a decision under the process applicable to the third step. *Id.* § 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id.* § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* § 701.5(d)(3)(ii).

Grievances claiming employee harassment, including claims of excessive force, "are of particular concern to the administration of [DOCCS] facilities," and subject to an expedited procedure whereby the grievance goes directly to the facility superintendent. *Id.* § 701.8; *see, e.g., Torres v. Carry*, 691 F. Supp. 2d 366 (S.D.N.Y. 2009) (Section 701.8 has been found applicable to claims of excessive force.). The superintendent is required to initiate an in-house investigation by higher-ranking supervisory personnel; request an investigation by the Inspector General's office; or request an investigation by the New York State Police Bureau of Investigation if the superintendent determines that criminal activity may be involved. 7 N.Y.C.R.R. § 701.8(d).

A grievance referred to the superintendent and determined to be an allegation of harassment may not be withdrawn and must be addressed by the superintendent. *Id.* The superintendent is required to render a decision on the grievance within twenty-five calendar days, and extensions may be granted only with the consent of the grievant. *Id.* § 701.8(f). If the superintendent fails to respond within the required twenty-five days, the grievant may appeal the grievance to CORC by "filing a notice of decision to appeal (form #2133) with the inmate grievance clerk." *Id.* § 701.8(g). If the grievant wishes to appeal the superintendent's response to CORC, he must do so within seven calendar days of receipt of that response. *Id.* § 701.8(h).

Generally, if a plaintiff fails to follow each of the required steps of the IGP, including receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).") (quotations marks and citations omitted).

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]") (quotation marks and citations omitted). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks and citations omitted).

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 1859-60. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. In

10

*Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), the Second Circuit noted

that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]"  The

illustrations of unavailability in *Ross* nonetheless guide the Court's inquiry.  *Mena v. City of New

York*, 13-CV-2430, 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Because non-exhaustion is an affirmative defense, the defendants bear the burden of

showing that a prisoner has failed to satisfy the exhaustion requirements.  *See Jones*, 549 U.S. at

216.  The plaintiff must then establish the IGP grievance procedure was unavailable to him under

*Ross*.  *Id.*

## III.    ANALYSIS

Applying the legal standard set forth above, the issue of exhaustion involves a two-step

analysis: (1) the Court must determine whether Plaintiff properly exhausted his administrative

remedies by following the steps required by the administrative review process, (2) if Plaintiff did

not exhaust his administrative remedies, the Court must then determine whether the

administrative remedy was available to Plaintiff.  *Hamlett*, 2019 WL 4306999, at *8.  Both steps

of the analysis are relevant here.

### A.    Plaintiff's Failure to Exhaust

"Receiving a decision from CORC after filing a federal lawsuit, as Plaintiff did in this

case, does not satisfy the PLRA's requirement that administrative remedies be exhausted before

filing suit and any such action, absent a determination that the IGP was unavailable to [the]

plaintiff, must be denied without prejudice."  *Sherwood v. Senecal*, 17-CV-0899, 2019 WL

5197606, at *5 (N.D.N.Y. May 20, 2019) (Dancks, M.J.) (citing *Neal v. Goord*, 267 F.3d 116,

122-23 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002)),

*adopted* 2019 WL 4564881 (N.D.N.Y. Sept. 20, 2019) (Sannes, J.).

As a result, I find that Plaintiff failed to exhaust his administrative remedies before filing this action.

### B.    Availability of Administrative Remedies

As explained above, the Court's finding that Plaintiff failed to exhaust his administrative remedies does not end the exhaustion review.  The question remains, however, whether exhaustion under the IGP was unavailable to Plaintiff pursuant to *Ross* and *Williams* where Plaintiff waited ninety-four days,[15] beyond the thirty-day deadline for CORC to issue its decision under the IGP, to commence this action and CORC did not issue its decision until more than one year after Plaintiff filed his appeal.  *Ross v. Blake*, 136 S. Ct. 1850 (2016); *Williams v. Corr. Officer Priatno*, 829 F.3d 118 (2d Cir. 2016).

Courts in the Second Circuit are split regarding whether a failure by CORC to timely respond to an appeal constitutes unavailability excusing a failure to exhaust.  *Compare Berkley v.*

---

[15]    The relevant time period for purposes of deciding whether a failure by CORC to timely decide an appeal renders a prisoner's administrative remedies unavailable for purposes of *Ross v. Blake*, 136 S. Ct. 1850 (2016),  is the delay between the date that a decision by CORC was due (i.e., 30 days after the prisoner's filing of his appeal to CORC) and the date that the prisoner's federal court complaint was signed (which, pursuant to the Prison Mailbox Rule, is the date of the filing of the prisoner's court action).  *Mayandeunas v. Bigelow*, 18-CV-1161, 2019 WL 3955484, at *4, n.10 & 11 (N.D.N.Y. Aug. 22, 2019) (Suddaby, C.J.) (citing *Rodriguez v. Reppert*, 14-CV-0671, 2016 WL 6993383 (W.D.N.Y. Nov. 11, 2016), *adopting* 2016 WL 11483439 (W.D.N.Y. Sept. 28, 2016) (indicating that the CORC appeal was filed on May 20, 2014, meaning the decision was due on June 19, 2014, and indicating that the complaint was filed on August 13, 2014, without mentioning that it was dated July 6, 2014, and thus "filed" pursuant to the Prison Mailbox Rule on that date, a mere seventeen days after the due date of the CORC decision); *Gizewski v. New York State Dep't of Corr. and Cmty. Supervision*, 692 F. App'x 668, 670, n.3 ("The eventual denial [of the appeal to CORC] does not cure the failure to exhaust [because] [s]ubsequent exhaustion after suit is filed is insufficient.")).  Here, Plaintiff filed his appeal to CORC on February 8, 2018, meaning that a decision was due on March 10, 2018.  Pursuant to the Prison Mailbox Rule, Plaintiff filed his Complaint on June 12, 2018, which means that the CORC decision was 94 days late at the time of filing.  CORC ultimately rendered its decision denying Plaintiff's grievance on April 24, 2019.

12

*Ware*, 16-CV-1326, 2018 WL 3736791, at *6 (N.D.N.Y. July 6, 2018) (Hummel, M.J.) (finding five month delay by CORC in rendering decision on appeal did not excuse Plaintiff from exhaustion requirement), *and Loccenitt v. Labrake*, 14-CV-6703, 2018 WL 826850, at *3 (W.D.N.Y. Feb. 12, 2018) (finding that a delay by CORC in rendering a decision on a plaintiff's appeal was not a defense to the exhaustion requirement), *with Henderson v. Annucci*, 14-CV-445A, 2016 WL 3039687, at *10 (W.D.N.Y. Mar. 14, 2016) ("Since plaintiff has been awaiting a decision from CORC for more than two years with respect to his grievance, . . . such an administrative remedy is no longer available to him for purposes of exhaustion under the PLRA"), *and Rossi v. Fischer*, 13-CV-3167, 2015 WL 769551, at *6 (S.D.N.Y. Feb. 24, 2015) (where CORC did not decide appeal until more than four months after it was filed, the court found administrative remedies were not available to the plaintiff and denied dismissal for failure to exhaust).

A number of the more recent district courts deciding the issue of availability of exhaustion when CORC has failed to render a timely decision have considered the issue under *Ross*, 136 S. Ct. at 1858-59, and *Williams*, 829 F.3d at 126, and concluded that exhaustion was unavailable to inmates in various instances where CORC had failed to decide an appeal in a timely manner under the regulations.  In *Rodriguez v. Reppert*, 14-CV-0671, 2016 WL 6993383, at *2-3 (W.D.N.Y. Nov. 11, 2016), the plaintiff filed his complaint two weeks before CORC issued its decision and nearly two months after DOCCS regulations had required it to do so.  The district court relied on *Williams* in finding that exhaustion had been unavailable to the plaintiff. *Id.*  The district court explained that while 7 NYCRR § 701.6(g)(2) authorizes an inmate to appeal to the next level when a lower level had not issued a timely determination under the IGP, "CORC'S failure to timely decide any appeal is fundamentally different than, for instance, a

13

superintendent's failure to timely decide an appeal, because the CORC decision is the final step in the DOCCS' internal grievance program" and "a prisoner whose CORC appeal was not timely decided has no other administrative body to which he can appeal." *Id.* at 3.

In *High v. Switz*, 17-CV-1067, 2018 WL 3736794 (N.D.N.Y. July 9, 2018) (Stewart, M.J.), the court found that the plaintiff had taken all the steps he could to fulfill the last step of the appeal process. *Id.* at 5. There, the plaintiff filed his appeal with CORC on February 6, 2017. *Id.* at 3. As of August 25, 2017, the plaintiff had not received a response from CORC so he wrote to CORC asserting that CORC had exceeded the time frame for deciding the appeal, and that he had therefore exhausted his administrative remedies and intended to file a claim in court. *Id.* The court, relying on *Ross* and *Williams*, found that exhaustion was unavailable, noting that "while the regulations at the preliminary stages [of the IGP] contemplate a next step for a grievant to take in the event he does not receive a response, there is no direction on any action a grievant may take if he does not receive a response from CORC. Indeed, 'the regulations give no guidance whatsoever' regarding what a grievant should do in this circumstance." *Id.* at 5 (quoting *Williams*, 829 F.3d at 126).

In *Bell v. Napoli*, 17-CV-0850, 2018 WL 6506072 (N.D.N.Y. Dec. 11, 2018) (Baxter, M.J.), CORC received the plaintiff's appeal on May 26, 2017, and a decision should have been rendered by June 26, 2017. *Id.* at 4-5. There, the plaintiff waited until August 4, 2017, with no decision from CORC, before commencing his lawsuit. *Id.* at 5. The court noted that "the regulations contain[ed] no instructions on how an inmate should proceed if the CORC continue[d] to ignore him after he [had] been informed that his appeal was 'received.'" Finding that administrative exhaustion had been unavailable to the plaintiff under *Williams*, the Court explained:

14

> The "next step after the CORC may be a federal action. However, if the
> "next step" language does not apply to the CORC's decision, an inmate
> who never receives a decision from the CORC, after the appeal is filed,
> will be unable to exhaust administrative remedies. In addition, by ignoring
> an inmate's appeal, as it appears to have done in this case, the CORC
> could delay a plaintiff's exhaustion indefinitely, making the remedy
> "unavailable" by thwarting plaintiff's attempt to exhaust.

*Id.* at 7.

In *Lovell v. McAuliffe*, 18-CV-0685, 2019 WL 4143361 (N.D.N.Y. May 1, 2019)
(Hummel, M.J.), *adopted* 2019 WL 4142593 (N.D.N.Y. Aug. 30, 2019) (McAvoy, J.), the
plaintiff filed an appeal of his grievance to CORC on May 27, 2017. *Id.* at 2. There, the plaintiff
filed his complaint on June 13, 2018, three-hundred fifty-two days after the thirty-day period
CORC had to render a decision on the plaintiff's appeal pursuant to 7 N.Y.CRR. § 701.5(d)(3)
expired, but before receiving the decision from CORC. *Id.* The Court held that "CORC's delay
in rendering a decision on [the plaintiff's] grievance excused him from the exhaustion
requirement." *Id.* at 7.

In *Sherwood v. Senecal*, 17-CV-0899, 2019 WL 5197606 (N.D.N.Y. May 20, 2019)
(Dancks, M.J.), *adopted* 2019 WL 4564881 (N.D.N.Y. Sept. 20, 2019) (Sannes, J.), the plaintiff
filed an appeal of his grievance to CORC on May 9, 2017. *Id.* at 5. There, the plaintiff filed his
complaint on August 16, 2017, sixty-nine days after the thirty-day period that CORC had to
render a decision on the plaintiff's appeal pursuant to 7 N.Y.C.R.R. § 701.5(d)(3) expired, but
before receiving a decision from CORC. *Id.* The Court concluded that "the decisions in
*Rodriguez*, *High*, and *Bell*, which rely significantly on *Williams*, to be well-reasoned and
applicable to the issue of the availability of exhaustion in this case." *Id.* at 7. As a result, the
Court concluded that "exhaustion was unavailable to [the p]laintiff." *Id.*

In *Mayandeunas v. Bigelow*, 18-CV-1161, 2019 WL 5273527 (N.D.N.Y. May 21, 2019)
(Dancks, M.J.), *adopted* 2019 WL 3955484 (N.D.N.Y. Aug. 22, 2019) (Suddaby, C.J.), the

plaintiff filed an appeal of his grievance to CORC on April 13, 2018, and had not received a response from CORC when he filed the action on September 26, 2018. *Id.* at 1. Moreover, as of the date that Rachel Seguin signed her declaration submitted in support of the defendants' motion, the plaintiff's grievance appeal was still pending a CORC disposition. *Id.* As a result, the Court concluded that "exhaustion was unavailable to [the p]laintiff." *Id.*

Here, I find that Defendants place too much reliance on the ruling in *Toliver v. Stefinik*, 12-CV-0077, 2016 WL 3349316 (N.D.N.Y. June 15, 2016) (D'Agostino, J.), which was decided nine days after the Supreme Court decided *Ross* and approximately one month before the Second Circuit decided *Williams*.[16] More significantly, *Toliver* was decided approximately one year before the Second Circuit, in *Gizewski*, "assume[d] arguendo that the [80-day] delay [between when the plaintiff filed his appeal to CORC on November 12, 2013, and when he dated and thus 'filed' his complaint in the N.D.N.Y. on January 13, 2014] . . . constituted [a] constructive denial [of his appeal]," before agreeing with the defendants' failure-to-exhaust argument on another ground. *Gizewski v. New York State Dep't of Corr. & Cmty. Supervision*, 692 F. App'x 668, 670 (2d Cir. 2017). I agree with Chief United States District Judge Glenn T. Suddaby, that the Second Circuit's "argumentative assumption [in *Gizewski*] . . ., at the very least, [was] an indication that a [time] limit [for CORC to respond to appeals] is within the realm of possibility." *Mayandeunas*, 2019 WL 3955484, at *4.

Moreover, I reject Defendants' argument that courts should not consider the length of time that it takes CORC to respond, and instead should consider merely whether a process was

---

[16]    It is also worth noting that *Toliver*, adopted the Report-Recommendation of United States Magistrate Judge Andrew T. Baxter of March 22, 2016, which was approximately three months before *Ross* was decided. *Toliver v. Fischer*, 12-CV-0077, 2016 WL 3351974 (N.D.N.Y. Mar. 22, 2016) (Baxter, M.J.).

16

available and whether that process was exhausted.  (Dkt. No. 32, Attach. 7 at 8-10.)  "CORC could delay a plaintiff's exhaustion indefinitely, making the remedy 'unavailable' by thwarting plaintiff's attempt to exhaust."  *Bell v. Napoli*, 17-CV-0850, 2018 WL 6506072, at *7 (N.D.N.Y. Dec. 11, 2018) (Baxter, M.J.).  In addition, I emphasize that I am "disturbed at seeing a delay of longer than a year (specifically one year, one month, [14] days) with regard to a CORC decision. The Court wonders what the rule would be were CORC (for whatever reason) to fail to *ever* render a decision: at what point in time would the inmate obtain the right to sue?  DOCCS would do well to amend 7 N.Y.C.R.R. § 701.5(d)(2)(i), (ii) so as to specify a date after which the inmate may sue, lest the courts effectively do so for it."  *Monroe v. Kociensky*, 17-CV-1050, 2019 WL 409412, at *4 (N.D.N.Y. Feb. 1, 2019) (Suddaby, C.J.).  "At some point CORC must face the consequences of its delays."  *Mayandeunas*, 2019 WL 3955484, at *5.

I find that the decisions in *Rodriguez*, *High*, *Bell*, *Lovell*, *Sherwood*, and *Mayandeunas*, which rely significantly on *Williams*, to be well-reasoned and applicable to the issue of the availability of exhaustion in this case.  Therefore, I conclude that exhaustion was unavailable to Plaintiff and recommend that Defendants' motion for summary judgment on exhaustion grounds be denied.[17]

For all of these reasons, I recommend denying Defendants' motion for summary judgment.

---

[17]    "Even if the Court were to recommend that Defendants be granted summary judgment for failure to exhaust, the recommendation would include that it be without prejudice.  Thus, if the District Court were to grant Defendants' motion for summary judgment, Plaintiff would be allowed to immediately refile his complaint as a new action since CORC has now decided his appeal."  *Sherwood*, 2019 WL 5197606, at *7, n.6 (citing *Loccenitt v. Labrake*, 14-CV-6703, 2018 WL 826850, at *3 (W.D.N.Y. Feb. 12, 2018)); *see also Toliver v. Stefinik*, 12-CV-0077, 2016 WL 3349316, at *7 (N.D.N.Y. June 15, 2016) (D'Agostino, J) (dismissing without prejudice, the plaintiff's unexhausted claims).

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 32) be

**DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14)

days within which to file written objections to the foregoing report. Such objections shall be

filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN**

**FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984

F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir.

1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

It is hereby respectfully **ORDERED** that the Clerk of the Court shall file a copy of this

Report-Recommendation on the docket of this case and serve a copy upon the parties in

accordance with the local rules.[18]

Dated: January 23, 2020
       Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[18]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).